**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JODY L. B.,

                                        Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,                No. 5:21-CV-734
                                                (CFH)

                                        Defendant.
_____

**APPEARANCES:**                        **OF COUNSEL:**

Amdursky, Pelky Law Firm                AMY CHADWICK, ESQ.
26 East Oneida Street
Oswego, New York 13126
Attorney for plaintiff

Social Security Administration          MICHAEL L. HENRY, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

        Jody L. B.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying his applications for social security income and disability insurance benefits.

_____

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 5.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

See Dkt. No. 1 ("Compl.").  Plaintiff moves for reversal and remand for the determination of benefits.  See Dkt. No. 11.  The Commissioner cross moves for judgment on the pleadings.  See Dkt. No. 12.  For the following reasons, the Commissioner's decision is affirmed.

## I. Background

On January 21, 2015, plaintiff filed a Title II application for disability insurance benefits alleging a disability onset date of December 31, 2011.  See T. at 157, 418.  His claim was denied on April 6, 2015.  See T. at 320.  On November 3, 2016, plaintiff filed Title II and Title XVI applications for disability insurance and social security income benefits.  See T. at 397-406.[3]  Plaintiff alleged a disability onset date of October 1, 2012.  See id. at 459-60.  The Social Security Administration ("SSA") denied plaintiff's claims on March 27, 2017.  See id. at 186-209.  Plaintiff requested a hearing, see id. at 212, and a hearing was held on October 30, 2018, before Administrative Law Judge ("ALJ") Jude B. Mulvey.  See id. at 44-79.  On December 11, 2018, the ALJ, consolidating his 2015 and 2016 applications, issued a partially favorable decision, limiting plaintiff to sedentary work.  See id. at 157-65.  The Appeals Council reviewed the ALJ's decision, vacated it, and remanded.  See id. at 175-80.  A second hearing was held before ALJ Mulvey on November 26, 2019. See id. at 81-118.  ALJ Mulvey then issued an unfavorable decision on January 14, 2020.  See id. at 10-20.  The

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  See Dkt. No. 10.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

Appeals Council denied plaintiff's request for review on April 17, 2020.  See id. at 1-5.

Plaintiff commenced this action on June 25, 2021.[4]  See Compl.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not

determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g),

1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied or it was not supported by substantial evidence.  See

Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d

464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning

that in the record one can find "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d

Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal

citations omitted)).  The substantial evidence standard is "a very deferential standard of

review . . . .  [This] means once an ALJ finds facts, we can reject [them] only if a

reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin.,

Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks,

---

[4] A plaintiff has sixty days to bring a civil action from the time the Appeals Council denies review.  See 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.").  The Appeals Council granted plaintiff an extension of time to file this civil action and it was subsequently timely filed. See T. at 31-37.

citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden

5

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

## III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since October 1, 2012, the alleged onset date.  See T. at 13.  At step two, the ALJ found that plaintiff had the following severe impairments: "bilateral hip issues, pancreatitis, major depressive disorder and history of substance abuse."  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 13-14.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except

> he is unable to climb ladders, ropes and scaffolds. He can occasionally kneel, crouch, crawl and stoop.  [Plaintiff] requires the use of a cane for prolonged ambulation, walking on uneven terrain and ascending/descending slopes; however, he retains the ability to carry small objects such as file[s] in his free hand.  Finally, [plaintiff] is limited to simple, routine and repetitive work.

Id. at 15.  At step four, the ALJ determined that plaintiff was unable to perform past relevant work.  See id. at 18.  At step five, considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id. at 18-19.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined

in the Social Security Act, from October 1, 2012, through the date of th[e] decision[.]"
Id. at 19.


## IV. Arguments[5]

### A. Appeals Council's Remand

As an initial matter, plaintiff argues that "the ALJ's [2018] Partially Favorable
Decision was supported by substantial evidence and the reasons given by the Appeal's
Council did not justify vacating this decision." Dkt. No. 11 at 13. The Commissioner
contends that the Court lacks jurisdiction to review the Appeals Council's remand order
and ALJ Mulvey's 2018 decision. See Dkt. No. 12 at 14-18.

"[T]his Court has jurisdiction to review [] 'a[ny] final decision[] of the
Commissioner of Social Security[.]'" Holley v. Comm'r of Soc. Sec., No. 3:11-CV-02012
(WIG), 2012 WL 3727269, at *2 (D. Conn. Jan. 9, 2012) (emphasis omitted) (quoting 42
U.S.C. § 405(g)). "An SSA determination is deemed final, and the claim exhausted,
only after the Appeals Council has denied review of an ALJ's determination or decided
the merits of plaintiff claims following an ALJ's decision." Jordan-Rowell v. Comm'r of
Soc. Sec., No. 15-CV-8326 (NSR/JCM), 2016 WL 7392221, at *2 (S.D.N.Y. Dec. 20,
2016). An Appeals Council's remand order is not a final reviewable decision. See
Iwachiw v. Massanari, 125 F. App'x 330, 331-32 (2d Cir. 2005) (summary order) (citing
Weeks v. Social Sec. Admin. Com'r., 230 F.3d 6, 7 (1st Cir. 2000) (noting that Appeals
Council's order vacating the ALJ's decision and remanding for further proceedings is not

---

[5] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages'
headers.

an appealable "final decision")) (explaining that "[w]hen [the plaintiff] filed his complaint

. . . the Commissioner had made no final decision in his case[; rather,] . . . the Appeals

Council vacated the ALJ's decision denying [the plaintiff's] benefits claim and remanded

the case for further proceedings. . . .  Thus, because [the plaintiff's] appeal was not from

a final decision of the Commissioner, the district court correctly concluded that it lacked

jurisdiction to hear his suit.").

Further, the Southern District of New York, when presented with an argument

concerning an initial ALJ decision, explained that "[t]he ALJ's first decision was vacated

by the Appeals Council when it remanded [the plaintiff's] case to the ALJ for a new

hearing.  It is thus no longer in effect and cannot be reviewed."  Thompson v. Astrue,

583 F. Supp. 2d 472, 476 (S.D.N.Y. 2008).  As neither ALJ's Mulvey's first decision or

the Appeals Council's remand order are final decisions, the Court lack jurisdiction to

review them.  See Bittle v. Saul, No. 3:19-CV-01384 (KAD), 2020 WL 4227710, at *3,

n.3 (D. Conn. July 23, 2020) ("Because the Appeals Council vacated [the] ALJ['s]

decision upon remand from the District Court, it no longer constitutes a final decision

from which the [p]laintiff can seek review."); Roberson v. Barnhart, 314 F. Supp. 2d 505,

508 (D. Md. 2003) ("An order to remand is not a final decision.").

**B. ALJ's RFC Determination**

Plaintiff argues that the ALJ's 2020 RFC determination is not supported by

substantial evidence because the ALJ "pick[ed] isolated statements and findings from

the record, and ignore[d] the remainder of the records documenting [p]laintiff's severe

impairment."  Dkt. No. 11 at 16.  Plaintiff also contends that the ALJ erred in analyzing

Kalyani Ganesh, M.D.'s, consultative examination opinions because the ALJ "gave no

further indication of what weight was being given to these opinions or how persuasive

8

she found them." Id. at 22.  The Commissioner asserts that the ALJ's decision is supported by substantial evidence.  See Dkt. No. 12 at 18-23.

### 1. ALJ Decision

In relevant part, the ALJ found plaintiff's bilateral hip issues and pancreatitis to be severe impairments.[6]  See T. at 13.  The ALJ noted that plaintiff had a "history of hip issues.  Diagnostic imaging of the left hip showed medial joint space narrowing and osteophytosis consistent with osteoarthritis.  Other diagnostic testing showed avascular necrosis.  Accordingly, [he] underwent a core decompression in December 2016[.]"  Id. (citing T. at 663, 685-89).  Further, "[r]ecords from 2018 describe an exam consistent with degenerative changes.  As a result, [plaintiff] underwent a left total hip arthroplasty.  Recent imaging also showed evidence of avascular necrosis on the right side, as well as moderately severe degenerative joint disease.  In March 2019, [plaintiff] underwent a right total hip arthroplasty."  Id. (citing T. at 1057, 1276-77, 1432, 1437).  As for his pancreatitis, the ALJ explained that plaintiff's "treatment provider indicated it is triggered by alcohol.  In August 2017, [plaintiff] underwent a cholecystectomy and Frey procedure.  [Plaintiff] has continued to complain of pain at times."  Id. (citing T. at 604, 637, 665, 680, 1197, 1292).

The ALJ also noted that plaintiff complained of "a left shoulder issue, a right ankle issue, and high blood pressure."  T. at 13 (citing T. at 459).  The ALJ explained that "[w]ith regard to the left shoulder, [plaintiff] has full range of motion.  He also has full strength in the left upper extremity.  [Plaintiff] has not regularly seen an orthopedic specialist for his shoulder."  Id. (citing T. at 720-21).  Next, "[w]ith regard to the right

---

[6] Plaintiff does not challenge the ALJ's decision as it relates to his mental health impairments.  See Dkt. No. 11.

ankle, [plaintiff] has full range of motion.  In addition, his stance and gait are both normal.  [Plaintiff] has not regularly seen an orthopedic specialist for [his] ankle." Id. (citing T. at 719-20).  Finally, the ALJ stated that "[w]ith regard to high blood pressure, records indicate it is" 118/70.  Id. (citing T. at 719).

In determining plaintiff's RFC, the ALJ stated that it was "based on the opinions of Kalyani Ganesh, M.D."  T. at 16.  Dr. Ganesh's first opinion was completed in 2015 and Dr. Ganesh found no physical limitations.  See id. at 1422.  According to the ALJ, Dr. Ganesh's examination findings were all "normal."  Id. at 16.  However, more specifically, Dr. Ganesh noted that plaintiff's ability to squat was "50% of full" and he could not walk on his heels and toes, but he otherwise was not in acute distress, he had a normal gait, he did not use an assistive device, and he did not need help changing for the exam or getting on and off the exam table.  Id. at 1420.  Dr. Ganesh noted that plaintiff had "a history of pancreatitis secondary to alcoholism.  He underwent extensive testing including colonoscopy.  He no longer drinks.  He said his stomach does not bother him as much.  The pain is better now that he is not drinking, but he still gets some pain that comes and goes.  He believes it is related to certain food items."  Id. at 1419.  The ALJ also discussed Dr. Ganesh's 2017 opinion.  See id. at 16.  In 2017, Dr. Ganesh determined that plaintiff had no limitations in sitting, standing, or the use of his upper extremities; and moderate limitations in walking and climbing.  See id. at 721. The ALJ reiterated some of Dr. Ganesh's examination findings: that plaintiff was not in acute distress, had a normal gait and stance, had a "somewhat limited range of motion of the hips, 4/5 strength in the lower extremities and full strength in the upper extremities."  Id. at 16; see T. at 719-21.  Additionally, Dr. Ganesh noted that plaintiff

could not "heel and toe walk.  Cannot squat."  Id. at 719.  During the 2017 examination, plaintiff did not use an assistive device.  See id.

The ALJ found "this opinion [to be] consistent with other records that indicate [that plaintiff's] pancreatitis resolves when he abstains from alcohol[,]" "records that describe no apparent distress following hip surgery[,]" records that describe only a slight limp[,]" and "recent records that describe improvement after receiving injections."  T. at 16 (citing T. at 1445-48).[7]  The ALJ also stated that "Dr. Ganesh examined [plaintiff] on two occasions, and she has professional expertise.  Based on the above, [the ALJ] g[a]ve [the] opinions weight."  Id.

The ALJ recounted plaintiff's subjective allegations that he had "bilateral hip issues, a left shoulder issue, a right ankle issue, pancreatitis and high blood pressure."  T. at 16 (citing T. at 459).  The ALJ stated that plaintiff "testified that he is in constant pain . . . he can only stand for five minutes at a time and walk for six or seven minutes at a time . . . [and] he is able to lift a gallon of milk[.]"  Id.; see T. at 94-96.  The ALJ noted that plaintiff "had an x-ray of the left elbow that was normal[,] . . . an x-ray of the left knee that was normal[,] . . .  [and] an x-ray of the right knee that was normal."  Id. at 17 (citing T. at 607-09).  The ALJ also stated that plaintiff's "MRI of the lumbar spine showed only mild issues."  Id. (citing T. at 1271).  Further, "after undergoing left hip surgery, [plaintiff] had no tenderness to palpation, as well as good range of motion.  Other records describe no pain with passive hip motion."  Id. (citing T. at 716, 1469).  The ALJ restated that during the 2017 consultative examination, plaintiff had a normal

---

[7] It is not clear whether the ALJ was referring to both opinions, or only the 2017 opinion when discussing consistency.  The ALJ stated "this" as in the 2017 opinion that she discussed in the preceding sentences, but referenced records regarding plaintiff's pancreatitis, which the ALJ only discussed in relation to the 2015 opinion.  T. at 16.

gait and stance.  See id.  The ALJ noted that "[r]ecords from 2018 state [that plaintiff] 'is able to walk a distance without much discomfort[,]'" "records from May 2019 describe only a mild limp[,]" "[o]ther recent records indicate [that plaintiff] is 'doing quite well' post-surgery[,]" "recent diagnostic imaging of the hips showed no acute findings[,]" and plaintiff "ha[d] been encouraged to remain active."  Id. (citing T. at 1445-48, 1466, 1827, 2160).  The ALJ indicated that plaintiff "only takes over-the-counter medication for pain." Id. (citing T. at 90-91).  Additionally, the ALJ noted that plaintiff "testified that his pancreatitis has been fine for the last year.  Other records indicate he only had issues related to alcohol abuse."  Id. (citing T. at 93).

### 2. Plaintiff's Contentions

Plaintiff identifies evidence in the record which he avers the ALJ ignored.  See Dkt. No. 11 at 16-21.  Plaintiff states that in August of 2016, hip x-rays indicated that plaintiff had "early arthritis and possible avascular necrosis in the left hip and joint space narrowing in the right."  Id. at 16 (citing T. at 664-65).  An examination of his hips revealed tenderness to palpation, positive impingement sign, pain with rotation, and diminished range of motion.  See T. at 685.  However, during this examination, plaintiff's left hip also showed "no atrophy or deformity. . . .  No instability.  5/5 muscle strength." Id.  In November 2016, "[p]laintiff indicated that walking was painful" and in December 2016, "he had stage one to two left hip avascular necrosis."  Dkt. No. 11 at 17 (citing T. at 684-85, 689, 704-05).  Plaintiff underwent a left hip decompression, and he contends that he did not benefit from the surgery.  See T. at 689-70.  Rather, plaintiff states that "just one month after surgery, it was already being documented that if his pain continued as it was, he would need a left hip replacement.  He continued to have

worsening pain in both hips." Dkt. No. 11 at 17 (citing T. at 716, 1725).  Plaintiff explains that in February 2018 he had "diffuse weakness, moderate quadriceps atrophy, antalgic gait, crepitation with motion, and a severe loss of range of motion" and "a total hip replacement was needed."  Id. (citing T. at 1056-57, 1294).  In April 2018, an examination revealed antalgic gait, discomfort with manipulation, and tenderness.  See T. at 1291-92.  Plaintiff's right hip was noted to be worsening.  See id. at 1291-92.

In May 2018, plaintiff had a total left hip replacement.  See T. at 1140.  Plaintiff notes that he subsequently had two falls, one in June and one in July 2018, but that he was able to walk without discomfort.  See Dkt. No. 11 at 18 (citing T. at 1066, 1069, 1303-04).  The medical report reflecting plaintiff's fall in June 2018 explains that he "fell walking outside, reported crutch got stuck on something, did not experience exacerbation in hip pain due to fall[.]"  T. at 1069.  Plaintiff walked with a cane in September 2018, and in October 2018, he was having difficulty walking.  See T. at 1305-07.  The treatment note which reflected plaintiff's report that he had "some continued difficulty with distance ambulation[,]" also noted that he had "[n]o pain with passive motion of the hip.  He ambulates slowly, but there is no limp.  He is not using any assistive device."  Id. at 1307-08.  In December 2018, plaintiff reported that his pain was worse than it had been prior to surgery.  See id. at 1429-30.

In January 2019, plaintiff reported that his right hip pain was severe and worsened when he placed weight on it.  See T. at 1431.  Plaintiff notes that "[h]e was still walking with a cane."  Dkt. No. 11 at 19 (citing T. at 1431).  X-rays indicated that "the avascular necrosis in the right hip had become high grade and that he had moderately severe degenerative joint disease in the right hip."  Id. (citing T. at 1432).

He continued to have tenderness and limited range of motion and in March 2019, he had a right hip replacement.  See T. at 1435.  Plaintiff notes that after the surgery "[h]e reported improved ability to walk initially, but ongoing pain."  Dkt. No. 11 at 19 (citing T. at 1443).  Plaintiff then fell down a flight of stairs in May 2019, and in September 2019, continued to report pain that worsened with walking.  See T. at 1448, 1552, 2160.  Plaintiff also restated his testimony that he had difficulty walking and standing, needed a cane, had fallen after surgery, and injections temporarily helped.  See Dkt. No. 11 at 19 (citing T. at 54-59, 90-92).

Plaintiff asserts that the need to use a cane "undermine[s] a determination that he is capable of light work."  Dkt. No. 11 at 21.  Plaintiff contends that light work "requires 'a good deal of standing and walking'" and the ability to carry up to twenty pounds but because plaintiff needs a cane to walk and can only use his free hand to lift small objects, an RFC for light work is inconsistent.  See id. (quoting 20 C.F.R. § 404.1567).

As to the ALJ's review of Dr. Ganesh's opinion, plaintiff contends that the ALJ "gave no further indication of what weight was being given to these opinions or how persuasive she found them.  The applicable regulations provide that in a determination or decision, the decision maker will articulate 'how persuasive' each of the medical opinions are."  Dkt. No. 11 at 22 (citing 20 C.F.R. §§ 404.1520c(b), §416.920c(b)).  Plaintiff also references ALJ Mulvey's first decision, comparing the conclusions between the first and second, and contending that the record supports the first partially favorable decision.  See id. at 23.

14

### 3. Analysis

As an initial matter, and as explained, ALJ Mulvey's first decision is not before the Court for review.  See supra at 7-8.  Rather, the Court is looking only to the second decision and whether the determinations are supported by substantial evidence. Further, in reviewing the second decision for substantial evidence, the appropriate regulations to apply are those that were in affect at the time plaintiff applied for benefits. See Wood v. Colvin, 987 F. Supp. 2d 180, 194, n.10 (N.D.N.Y. 2013) (citation omitted) ("For the purposes of the Court's review, however, the Court applies the regulations that were in effect at the time [the plaintiff] applied for disability benefits.").  Accordingly, the regulations for claims filed before March 27, 2017, requiring the ALJ to "weigh" the medical opinions applies rather than the newer regulations directing an ALJ to evaluate the "persuasiveness" of medical opinions.  See, e.g., Eddie F. v. Saul, No. 3:19-CV-958 (DJS), 2020 WL 4745250, at *4 (N.D.N.Y. Aug. 17, 2020) ("The 'treating physician rule,' set out in 20 C.F.R. § 416.927(c), applies to [the p]laintiff's claim as it was filed before March 27, 2017.").

Under the relevant regulations, when evaluating a medical opinion, "[r]egardless of its source," the ALJ must consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the opinion; (4) the consistency of the opinion with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any "other factors" that "tend to support or contradict the medical opinion."  20 C.F.R. §§ 404.1527(c), 416.927(c).  "[A]n ALJ need not mechanically recite

15

these factors as long as the record reflects a proper application of the substance of the rule." Samantha S. v. Comm'r of Soc. Sec., 385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019); see also David E. v. Saul, No. 5:20-CV-466 (DJS), 2021 WL 1439668, at *4 (N.D.N.Y. Apr. 16, 2021) (citations and quotation marks omitted) ("Where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the substance of the treating physician rule was not traversed, no slavish recitation of each and every factor of 20 C.F.R. §§ 416.927 & 404.1527(c) is required.").[8]

Moreover, in determining a plaintiff's RFC, "[c]herry picking 'refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.'" Pamela P. v. Saul, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (quoting Dowling v. Comm'r of Soc. Sec., 5:14-CV-0786 (GTS/ESH), 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015)). "An ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." Robin P. v. Comm'r of Soc. Sec., No. 1:20-CV-863 (TJM), 2022 WL 593612, at *9 (N.D.N.Y. Feb. 28, 2022) (citations and quotation marks omitted); see Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (citations omitted) ("Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all medical evidence in a claimant's favor.").

---

[8] For claims filed before March 27, 2017, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citations omitted); see also Halloran, 362 F.3d at 31. There is no treating physician opinion in the record.

Here, the ALJ did not cherry pick the record or improperly weigh Dr. Ganesh's consultative opinions.  The ALJ acknowledged the records which indicated that even after plaintiff's hip surgeries, he walked with a slight limp, continued to have tenderness, his "pain [wa]s daily and usually weightbearing[,]" he "continued to have sharp and stabbing pain[,]" his hip had "profound degenerative change" and did "not tolerate rotation[,]" and he walked with a "pronounced limp[.]"  T. at 1047, 1432, 1445-48, 1466, 2160.  Although the ALJ did not recite these records verbatim in her decision, she explicitly cited them.  The ALJ also recounted plaintiff's testimony that he was in constant pain.  See id. at 16.  See Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) ("[T]he ALJ's decision in this case contains ample reference to all the medical sources.  Thus, a conclusion that the ALJ did not consider all the evidence or that he selectively excluded objective findings is unwarranted.").  The ALJ also referenced the records which reflect that plaintiff was "encouraged him to continue activity as tolerated and conservative measures to support any discomfort" and "[h]e is only taking Motrin for pain control and he feels that this discomfort has slightly improved since his previous office visit."  T. at 1445-48.  Although plaintiff contends that the records indicating plaintiff's continued pain and use of a cane mandate a finding that he cannot perform light work, the ALJ reviewed these records and disagreed.  See T. at 13-17.  The Court will not reweigh the evidence that was before the ALJ.  See Laura Anne H. v. Saul, No. 6:20-CV-397 (TWD), 2021 WL 4440345, at *3 (N.D.N.Y. Sept. 28, 2021) ("Upon reviewing the record with particular attention to the evidence that both parties cite, it is clear that, although the Court or another ALJ might have weighed the

evidence differently or reached a different determination on [the p]laintiff's subjective complaints, there is substantial evidence in the record to support the ALJ's finding.").

Further, as required by the relevant regulations, the ALJ considered Dr. Ganesh's opinions in light of what Dr. Ganesh "based" her determinations on—the consultative examinations— and explained the opinions' consistency with the record, as well as Dr. Ganesh's examining history and professional expertise. See T. at 16. Plaintiff states that in ALJ Mulvey's 2018 decision she gave Dr. Ganesh's 2017 opinion "great weight" and the 2015 opinion "less weight[.]" Dkt. No. 11 at 22; see T. at 162-63. In the 2020 decision that is currently under review, the ALJ gave Dr. Ganesh's "opinions weight." T. at 16. There is nothing in the regulations—and plaintiff does not point to caselaw or authority indicating otherwise—that requires the ALJ to state the level of weight given to an opinion. Rather, the regulations require the ALJ to evaluate the medical opinions according to the factors listed in 20 C.F.R. § 404.1527(c). The ALJ explicitly considered those factors. See T. at 16. To be sure, the 2015 and 2017 opinion are contradictory, where the 2017 opinion provides for greater physical limitations. Compare T. at 720-21, with T. at 1420-22. However, it is clear that the ALJ's RFC determination is based primarily on Dr. Ganesh's 2017 opinion, which is the more restrictive and favorable opinion as the RFC incorporates Dr. Ganesh's moderate limitation findings. See Poole v. Saul, 462 F. Supp. 3d 137, 154 (D. Conn. 2020) ("The ALJ, however, is not required to explicitly discuss each factor, provided that her decision and the evidence of record allows the Court to glean the ALJ's rationale."); cf. Theresa G. v. Saul, No. 5:20-CV-362 (DJS), 2021 WL 1535472, at *5 (N.D.N.Y. Apr. 19, 2021), (citation and quotation marks omitted) ("The fact that a limitation was included despite

its absence from any medical opinion means simply that the RFC was more generous than the medical opinions required and where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand."), reconsideration denied, No. 5:20-CV-362 (DJS), 2021 WL 2282024 (N.D.N.Y. June 4, 2021).  Although the ALJ could have more clearly distinguished the weight afforded to the 2015 and 2017 opinions, the Court finds no legal error in the ALJ's determination because she explained her consideration of the opinions based on the required factors.  See T. at 16.  Moreover, in addition to relying on Dr. Ganesh's opinions, the ALJ appropriately relied on the objective record and plaintiff's complaints of pain in determining plaintiff's RFC.  See T. at 16-18.

The ALJ limited plaintiff to light work but noted exceptions: "he is unable to climb ladders, ropes and scaffolds.  He can occasionally kneel, crouch, crawl and stoop. [Plaintiff] requires the use of a cane for prolonged ambulation, walking on uneven terrain and ascending/descending slopes; however, he retains the ability to carry small objects such as file in his free hand."  T. at 15.  During the hearing, the ALJ asked the vocational expert ("VE") whether there were jobs that a hypothetical plaintiff could perform "at the light exertional level . . . [and] is prohibited from climbing ladders, ropes, or scaffolds, can occasionally crouch, crawl, or stoop[.]"  Id. at 114.  The VE identified three jobs: marker, cleaner, and routing clerk.  See id. at 115.  The ALJ asked if there were jobs available if she further limited the hypothetical plaintiff to requiring "the use of a cane for prolonged ambulation, walking on uneven terrain, or ascending and descending slopes, but the individual retains the ability to carry small objects, such as files in the free [hand.]"  Id.  The VE responded that the additional limitations "would

have an impact on the cleaner job, not the marker or routing clerk." Id.  The ALJ asked "what impact would it have on the cleaner, would it eliminate it, or would it erode it the numbers?" Id.  The VE testified that "it would erode the numbers, probably by 50 percent." Id.  The ALJ referred to the first hearing she held prior to the 2018 decision, and asked "if I had changed the exertional level to sedentary, I would note that the prior vocational expert identified the jobs as addresser, stuffer, and document preparer . . . would you agree that those jobs would still be in effect . . . [e]ven if the individual needs to use the cane?" Id. at 116-17.  The VE responded, "Yes." Id. at 117.

Although plaintiff is correct that some light work positions may require standing and walking for long periods of time, the ALJ accounted for plaintiff's additional limitations in requiring the use of his cane for prolonged ambulation and in only being able to "carry small objects" in his free hand.  T. at 15; see 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").  "Courts routinely find it is appropriate for an ALJ to rely on medical source opinions finding that a plaintiff has mild or moderate limitations to support an RFC determination that a plaintiff can perform light work when there is other evidence of record also supporting that conclusion."  Ray v. Comm'r of Soc. Sec., 1:19-CV-00345 (EAW), 2020 WL 2315581, *5, (W.D.N.Y. May 11, 2020); see, e.g., White v. Berryhill, 753 F. App'x 80, 82 (2d Cir. 2019) (summary order) (disagreeing with the plaintiff's claim that the ALJ could not infer the plaintiff's ability to perform light work based on a doctor's

opinion that the plaintiff had moderate limitations, and holding that it could "[ ]not conclude that a reasonable factfinder would have to conclude that [the plaintiff] lacked the ability to perform light work with the limitations articulated with the ALJ") (citation, emphasis, and internal quotation marks omitted); Gurney v. Colvin, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (noting that "moderate limitations— such as those [regarding repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying]—are frequently found to be consistent with an RFC for a full range of light work").  Here, Dr. Ganesh determined that plaintiff had moderate limitations in walking and climbing and the record indicated that plaintiff used a cane, had some continued pain, he received injections that helped, and he was encouraged to be active to the degree he could tolerate.  See T. at 721, 1445-48, 1466, 1827, 2160.  Although, as plaintiff explains, he reported falling after his hip surgery, a treatment note explicitly indicated that one fall was because his crutch got stuck on something and he did not experience an increase in pain as a result.  See id. at 1069.  Further treatment notes revealed that in May 2019 he received an injection to help with the pain and "[a]ctually upon leaving the office [he] already noted some pain relief[]" and in September 2019 returned to receive another injection because "[i]n the past . . . [it] seemed to help quite a bit."  Id. at 1448, 2160.  Moreover, after his left hip replacement, plaintiff had "[n]o pain with passive motion of the hip.  He ambulates slowly, but there is no limp.  He is not using any assistive device."  Id. at 1307-08.  Plaintiff also only took over the counter medication to help with his pain.  See id. at 90-91, 1445.  These records provide substantial support for the ALJ's RFC determination.

However, "[i]f [the p]laintiff needs to use a cane for support and balance, that would mean at least one hand is [] not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal." Wright v. Colvin, No. 6:13-CV-06585 (MAT), 2015 WL 4600287, at *5-6 (W.D.N.Y. July 29, 2015); see also Borrero v. Saul, No. 3:19-CV-01306 (TOF), 2020 WL 7021675, at *10 (D. Conn. Nov. 30, 2020) (collecting cases) ("[C]ourts have held that failure to make an explicit finding as to a [p]laintiff's ability to lift and carry while using a cane to ambulate was error and grounds for remand.").  As long as the ALJ "discuss[es], evaluate[s], and incorporate[s] [the plaintiff's] need for a cane into the RFC determination[,]" remand is generally not warranted.  Magby v. Colvin, No. 15-CV-285 (FPG), 2016 WL 4585903, at *2-3 (W.D.N.Y. Sept. 2, 2016) (explaining that "the ALJ did not err when he determined that [the plaintiff] could perform a reduced range of light work with the use of a cane" because "the ALJ incorporated [the plaintiff's] cane use and additional lifting restrictions into the RFC determination" and "the ALJ posed a hypothetical question to the VE that included the caveat that 'the individual would use a cane to ambulate.'"); but see Feringa v. Comm'r of Soc. Sec., No. 5:15-CV-785 (LEK/CFH), 2016 WL 5417403, at *7 (N.D.N.Y. Sept. 9, 2016), report and recommendation adopted, 2016 WL 5415780 (N.D.N.Y. Sept. 28, 2016)  ("[T]he RFC does not address additional possible limitations that arise for someone who requires the aid of a cane when ambulating, such as how use of a cane in one's dominant hand may impact his ability to complete some of the duties of light work, such as the ability to carry items weighing up to twenty pounds with one hand while using a cane in another, and whether the need to use a cane in general could result in additional limitations on light work.").

Here, the ALJ reviewed the record and relied on Dr. Ganesh's moderation limitation finding, as well as plaintiff's reported need and use of a cane and continued pain to find that plaintiff was capable of light work with the additional restrictions of needing to use "a cane for prolonged ambulation, walking on uneven terrain and ascending/descending slopes" and being able "to carry small objects such as file in his free hand." T. at 15.  The ALJ asked the VE how these additional limitations would affect plaintiff's ability to work and the VE testified that there would still be jobs available to plaintiff.  See id. at 115-17.  Accordingly, because the ALJ appropriately considered the objective record and plaintiff's complaints of pain, and incorporated additional limitations into the RFC, remand is not warranted on this ground.  Contra Sean W. v. Comm'r. of Soc. Sec., No. 20-CV-1653 (FPG), 2022 WL 472570, at *3 (W.D.N.Y. Feb. 16, 2022) ("Nowhere does the ALJ address additional possible limitations that may arise from Plaintiff's use of a cane.  This is not harmless error because . . . [the p]laintiff's need to use a cane to balance may interfere with his ability to sit and stand—as limited by the ALJ—or his ability perform tasks while standing and holding a cane.").

## C. Borderline Age Situation

Plaintiff argues that "the ALJ erred in failing to consider a Partially Favorable decision based upon a borderline age situation."  Dkt. No. 11 at 23.  Plaintiff contends that at the time the unfavorable decision was issued on January 14, 2020, [p]laintiff was only six months away from turning fifty-five [and h]ad the higher age category been applied, he would have been found disabled[.]"  Id. at 24.  The Commissioner states that the ALJ "was not required to treat [p]laintiff's case as a 'borderline age situation' and round his age up to 55 for purposes of applying the Grids[.]"  Dkt. No. 12 at 23.  The

Commissioner avers that when the decision was issued "[p]laintiff was 54 years, 5 months, 27 days old[.]"  Dkt. No. 12 at 24.

"The regulations direct that the age category that applies to a plaintiff during the period for which [he or] she claims disability be used to determine whether or not [the] plaintiff is disabled."  Jeanette J. v. Saul, No. 6:19-CV-0795 (ML), 2020 WL 4932047, at *6 (N.D.N.Y. Aug. 24, 2020).  "The Grids contain three age categories: 'younger person' (under age 50); 'person closely approaching advanced age' (age 50–54); and 'person of advanced age' (age 55 or older)."  Kathy H. v. Comm'r of Soc. Sec., No. 5:19-CV-684 (ATB), 2020 WL 3960846, at *12 (N.D.N.Y. July 13, 2020) (quoting 20 C.F.R. § 404.1563(c)-(e)).  "If [a plaintiff is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case."  20 C.F.R. §§ 404.1563(b), 416.963(b).  "[T]he age categories are not to be applied mechanically in a borderline situation, such as where a claimant is within a few days or months of obtaining an older age category and using the older age category would result in a determination or decision that [the plaintiff] [is] disabled."  Waldvogel v. Comm'r of Soc. Sec., No. 6:16-CV-0868 (GTS), 2017 WL 3995590, at *11 (N.D.N.Y. Sept. 11, 2017) (citations and quotation marks omitted).  "In evaluating whether to apply the older age category, the Agency considers 'the overall impact of all the factors in [the] case.'"  Id. (quoting 20 C.F.R. §§ 404.1563(b), 416.963(b)).  The "failure to consider the borderline age situation and determine whether the higher age category should [] be[] applied" is error that can warrant remand.  Id. at *12 (footnote omitted).

24

To determine whether a borderline age situation exists, "ALJs will assess whether the claimant reaches or will reach the next higher age category within a few days to a few months after[,]" in relevant part, the date of last insured or date of adjudication.  HALLEX I-2-2-42, Borderline Age, 2016 WL 1167001, at *1.  Then, if the plaintiff is "within a few days to a few months" of the older age category, the question is whether "using the higher age category [would] affect the outcome of the decision[.]"  Id. "[I]f using the higher age category does not affect the outcome of the decision, a borderline age situation does not exist . . . .  However, if" the plaintiff is within a few days or months of the higher category "and using the higher age category does affect the outcome of the decision, a borderline age situation does exist[.]"  Id. (emphasis added).

The ALJ explained in her decision that on the alleged disability onset date plaintiff "was 46 years old, which is defined as a younger individual age 45-49 . . . [but he] subsequently changed age category to closely approaching advanced age[.]"  T. at 18.  The ALJ did not discuss a borderline age situation.  See id.  As plaintiff states and based on the Grids, at the time of the ALJ's decision if the older "advanced age" category was applied to plaintiff, he would have been found disabled.  See Dkt. No. 11 at 24; 20 C.F.R. § Pt. 404, Subpt. P, App. 2.  Therefore, the ALJ would have been required to discuss the borderline age situation if plaintiff was "within a few days to a few months" of the older category.

The SSA provides guidance as to when an ALJ should consider a borderline age situation:

> [the] SSA does not have a precise programmatic definition for the phrase "within a few days to a few months."  The word "few" should be defined using its ordinary meaning, e.g., a small number.  Generally, SSA

considers a few days to a few months to mean a period <u>not to exceed six months</u>.

HALLEX I–2–2–42, <u>BORDERLINE AGE</u>, 2016 WL 1167001, at *1 (Mar. 25, 2016) (emphasis added).  There is an apparent split in the district courts about what constitutes the outer limits of a borderline age situation: three or six months.  <u>See</u> <u>Brodskiy v. Comm'r of Soc. Sec.</u>, No. 19-CV-6211 (EK), 2021 WL 2685418, at *2 (E.D.N.Y. June 30, 2021) (collecting cases indicating that "'[c]ourts within the Second Circuit have concluded, that three months constitutes the outer limits of a 'few months' for the purposes of borderline age.'") (quoting <u>Amato v. Berryhill</u>, No. 16-CIV-6768, 2017 WL 11455346, at *22 (S.D.N.Y. Dec. 1, 2017), <u>report and recommendation adopted</u>, 2019 WL 4175049 (S.D.N.Y. Sept. 3, 2019)) (citing <u>Pennock v. Comm'r of Soc. Sec.</u>, 14-CV-1524, 2016 WL 1128126, at *11 (N.D.N.Y. Feb., 23, 2016) ("[A]mong the district courts in the Second Circuit, three months appears to delineate the outer limits of 'a few months.'")); <u>but</u> <u>see</u> <u>Goncalves v. Berryhill</u>, No. 3:17-CV-01830 (JCH), 2018 WL 6061570, at *4 (D. Conn. Nov. 20, 2018) ("[M]ost but not all courts in this Circuit have found that claimants who are within six months of reaching an older age category qualify as a borderline age situation.") (citing <u>Hollinsworth v. Colvin</u>, No. 15-CV-543 (FPG), 2016 WL 5844298, at *5 (W.D.N.Y. Oct. 6, 2016) (collecting cases in which courts have held that a period of up to six months was borderline); <u>Torres v. Comm'r of Soc. Sec.</u>, No. 14-CV-6438P, 2015 WL 5444888, at *10 (W.D.N.Y. Sept. 15, 2015) (same)).  This Court has recently "agree[d] with *Hollinsworth*, [] which cites several district court cases from within the Second Circuit holding, consistent with the agency guidance, that up to six months from the next age category may be borderline." <u>Kathy H. v. Comm'r of Soc. Sec.</u>, No. 5:19-CV-684 (ATB), 2020 WL 3960846, at *12

(N.D.N.Y. July 13, 2020) (quotation marks omitted); see Hollinsworth, 2016 WL 5844298, at *5.[9]

Plaintiff was three-days shy of reaching the six-month limit.  See Dkt. No. 12 at 24.  The Southern District has remanded a case where the plaintiff "was six months and fourteen days shy" of the higher age category and "the ALJ failed to identify whether this was a borderline situation and failed to address the implications of the timing of her decision[.]"  Metaxotos v. Barnhart, No. 04-CV-3006 (RWS), 2005 WL 2899851, at *7-8 (S.D.N.Y. Nov. 3, 2005).  In Metaxotos, the court relied on out of circuit cases to determine that the ALJ should have considered whether a borderline age situation existed beyond the six-month limit.  See id. at *8.  The Court is unable to find another case in this Circuit ordering remand where an ALJ failed to consider a borderline age situation where the plaintiff was more than six months away from the higher age category.  Although it is true that the age categories should not be applied "mechanically in a borderline age situation[,]" the guidelines state that a borderline age situation should "not [] exceed six months."  HALLEX I-2-2-42 Borderline Age, 2016 WL 1167001, at *1.  As the Commissioner states, extending the limit beyond the six months would create a "borderline of the borderline" situation. Dkt. No. 12 at 24.  Therefore, given the SSA's guidance, and in accordance with the cases in this Circuit that have

_____

[9] The SSA's "lack of clarity is intentional because, as the SSA itself has explained, "'fixed guidelines as to when a borderline situation exists . . . would themselves reflect a mechanical approach'" to determining the effect of age on a person's ability to perform work available in the national economy."  Goncalves, 2018 WL 6061570, at *4 (quoting Hollinsworth, 2016 WL 5844298, at *5 (quoting Social Security Ruling 83-10 (Jan. 1, 1983))).  "That said, the SSA has elaborated on its approach to borderline age cases through guidance published in its Hearings, Appeal and Litigation Law Manual ("HALLEX") and its Program Operations Manual System ("POMS").  In these documents, the SSA notes that '[t]he word 'few' should be defined using its ordinary meaning, e.g., a small number[,]' and that the Commissioner generally 'considers a few days to a few months to mean a period not to exceed six months.'"  Id. (quoting HALLEX I-2-2-42(B)(1); POMS DI 25015.006(B)).

followed it, because plaintiff was three days shy[10] of the outermost six-month boundary from the borderline age situation, the ALJ was not required to consider whether to apply the higher age category.[11]  Cf. Battaglia v. Comm'r of Soc. Sec., No. 1:18-CV-00390 (EAW), 2019 WL 3764660, at *5 (W.D.N.Y. Aug. 7, 2019) (emphasis added) (remanding where the ALJ did not "at a minimum . . . acknowledge the existence of a borderline age situation" where the plaintiff "was less than six months from her 50th birthday[.]"); Konwicki v. Berryhill, No. 18-CV-460, 2019 WL 3162090, at *3 (W.D.N.Y. July 16, 2019) (emphasis added) (collecting cases) ("District Courts within the Second Circuit have interpreted "a few months" to be a range from two months or less to up to six months."). Accordingly, remand is not warranted on this ground.


## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

---

[10] Under the regulations, a claimant "reach[es] a particular age on the day before [his] birthday."  20 C.F.R. § 404.102.
[11] There is no question that if the Court chose to apply the three-month boundary, plaintiff would not have been in a borderline age situation.  See Amato, 2019 WL 4175049, at *3 ("Several courts within the Second Circuit have found that claimants within three months of a new age category are in borderline situations.").

**IT IS SO ORDERED.**

Dated: May 16, 2022
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge